UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LOREN C. MARQUEZ, o/b/o A.N.M., | No. ED CV 11-01966-VBK |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | (Social Security Case) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits.  Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge.  The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner.  The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1.   Whether the Administrative Law Judge ("ALJ") conducted a

1      full and fair hearing;

2      2.    Whether Plaintiff's disability ceased on March 1, 2004;

3      3.    Whether any of Plaintiff's impairments or the combination of

4            here impairments meet or medically or functionally equal the

5            Listing;

6      4.    Whether the ALJ properly relied on Dr. Meyer's, Dr.

7            Townsend's and Dr. Taylor's reports and on Plaintiff's

8            teacher's questionnaire;

9      5.    Whether the ALJ improperly rejected Dr. Shuhaibars's and Dr.

10           Heindelman's reports; and

11     6.    Whether the ALJ properly assessed Plaintiff's mother's

12           credibility.

13     (JS at p. 13.)

14

15     This Memorandum Opinion will constitute the Court's findings of

16     fact and conclusions of law.  After reviewing the matter, the Court

17     concludes that the decision of the Commissioner must be affirmed.

18

19     **INTRODUCTION AND PROCEDURAL HISTORY**

20     This case comes back to the Court following a Judgment remanding

21     the case for new hearing consistent with a Memorandum Opinion issued

22     by the Court on April 20, 2009. (See AR at 214, 215-226.)

23     Following the Judgment, a different ALJ conducted a new hearing

24     on February 24, 2010 (AR 424-444), at which Plaintiff appeared,

25     represented by counsel (the same counsel who represents her in this

26     action), and testimony was taken from Dr. Kania, appearing as a

27     Medical Expert ("ME").  The matter was adjourned and the hearing

28     resumed on June 25, 2010, at which time Plaintiff appeared with the

minor claimant A.N.M. (hereinafter "Claimant"), represented by the same counsel, and Dr. Kania again appeared and testified as an ME. (AR 445-491.)

The ALJ issued an unfavorable decision on November 18, 2010. (AR 184-201.)  This action followed.

The Claimant was born on September 4, 2001.  On October 5, 2001, the Claimant, by and through her mother, filed an application for benefits under Title XVI of the Social Security Act ("Act"). (AR 88-91.)  That claim was granted on October 30, 2001, retroactive to the date of birth, based on Claimant's extremely low birth weight, which functionally equaled the severity of the impairment listed at 20 C.F.R. § 404, Subpart P, Appendix 1, Section 100.02.  In March 2004, benefits were terminated on the ground that Claimant's medical condition had improved. (AR 42, 44.)  Claimant's mother appealed that decision, which was administratively denied, but, as noted above, after Claimant's mother filed an action in this Court. Judgment was entered on April 20, 2009 for Claimant, remanding the matter to the Commissioner for further proceedings.

**ALJ Decision**.

In the ALJ's lengthy Decision, he ultimately concluded that the Claimant was no longer disabled as of June 1, 2004. (AR at 184.)  The ALJ concluded that since June 1, 2004, Claimant has had severe impairments of attention deficit hyperactivity disorder ("ADHD"), and a learning disorder, pursuant to 20 C.F.R. § 416.924(c). (AR 194.)  He also concluded that since the same date, Claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, subpart B,

Appendix 1, nor have any of her impairments functionally equaled any of the listings. (AR 195.)

**Applicable Law re Childhood Disability: Cessation or Existence of Disability**.

With regard to the procedures which must be followed to examine whether a child's disability has ceased, a three-step evaluation process is incorporated in 20 C.F.R. § 416.994a(b); see SSR 05-03p. At the first step, the question is whether there has been medical improvement in the impairment(s) which formed the basis of the most recent favorable determination or decision. (See 20 C.F.R. § 416.994a(b)(1).) If there has been no medical improvement in that impairment(s), a finding must be made that the child's disability continues. If there has been medical improvement, the inquiry shifts to Step Two, which focuses on whether the impairment(s) still meets or medically or functionally equals the severity of the listed impairment. If the impairment(s) does not meet or medically equal the severity of the Listing, the inquiry proceeds to the third step, which requires a determination of whether the child's current impairment(s) are disabling under the rules set out in 20 C.F.R. § 416.024. The step to determine current disability are described in 20 C.F.R. § 994a(b)(3)(i)-(iii). These steps require determination of whether a child has a severe impairment or combination of impairments, whether this impairment(s) meets or medically equals the severity of any of the Listings, and if not, whether the impairment(s) functionally equals the Listings. (See, infra, for further discussion of applicable law.)

//

# I

## THE ALJ CONDUCTED A FULL AND FAIR HEARING

In her first issue, Plaintiff contends that the ALJ failed to conduct a full and fair hearing, for several reasons. First, that the ALJ inappropriately or arbitrarily thwarted examination by Plaintiff's counsel, and second, that the ALJ failed to resume the hearing, as he had allegedly promised he would do at the conclusion of the second session. For the following reasons, these contentions have no merit.

First, having reviewed the record, the Court does not perceive that the ALJ inappropriately curtailed examination by Plaintiff's counsel. Counsel posed numerous questions of the ME and responses were provided to these questions. (AR 468-476.) The ALJ interrupted only to indicate that some of counsel's questions were poorly formed and would not elicit a reasonable response. (AR 471-473.) Counsel attempted to read verbatim from the record, which resulted in the ALJ reminding counsel that there were time limits of which he should be aware. (Id.) All in all, the Court does not perceive that counsel was inappropriately limited in his examination.

Plaintiff's second point is that the ALJ failed to resume the hearing, which resulted in prejudice to Plaintiff meriting a remand for further hearing. The record, though, actually indicates that the ALJ indicated he considered resuming the hearing, but that this would be dependent and contingent upon Plaintiff providing some clarification of medical records as to medical treatment which occurred for Claimant before 2006. (AR 490-491.) Indeed, the ALJ stated that a supplemental hearing would not occur unless Plaintiff provided these medical records for the period of 2004 and 2005. (AR 249, 490-491.) The ALJ thus continued that hearing giving sufficient

1    time to allow Plaintiff to obtain these medical records, which
2    Plaintiff failed to do. (AR 437, 250.)  Consequently, the Court cannot
3    and does not conclude that the ALJ's decision not to hold a third
4    session of the hearing caused such prejudice to Plaintiff that her due
5    process rights were violated.  See Mathews v. Eldridge, 424 U.S. 319,
6    333 (1976); Solis v. Schweiker, 719 F.2d 301, 302 (9th Cir. 1983).
7    Fundamentally, the Court concludes that the ALJ acted within his
8    discretion in making this determination.

9

10                                    **II**

11              **ISSUES 2, 3 AND 4 DO NOT PROVIDE GROUNDS FOR REVERSAL**

12          The Court will address the second through fourth issues raised by
13   Plaintiff together.   This concerns whether Claimant's disability
14   ceased on June 1, 2004 (Issue No. 2);[1] whether any of Claimant's
15   impairments or combination of impairments meet or medically or
16   functionally equal a Listing (Issue No. 3); and whether the ALJ
17   properly relied upon evidence in the record from Drs. Meyer, Townsend,
18   and Taylor, and on the Claimant's teacher's Questionnaire (Issue No.
19   4).

20          Plaintiff contends that the ALJ found that Claimant's disability
21   ceased solely on the basis that her conditions of low birth weight and
22   prematurity had improved.   This does not properly encapsulate the
23   ALJ's current Decision.   The ALJ evaluated Claimant's impairments as
24   of the date of the "Comparison Point Decision" (AR 188), and also
25   impairments that occurred after that date. (AR 194.)   The ALJ

26   ──────────────

27          [1]    As framed by Plaintiff, the issue is whether Claimant's
     disability ceased on March 1, 2004; however, the ALJ's Decision
28   concluded that the disability ceased on June 1, 2004.

evaluated whether any of these found impairments were disabling according to the requirements of the Listings. (AR 188-201.) As noted, the ALJ found that Claimant had other severe impairments but determined that they did not meet or equal Listing level severity. (AR 194-200.) Finding that disability ceased as of June 1, 2004, the ALJ relied upon a June 2004 medical report which indicated that the original disabling condition of low birth weight and prematurity had improved. (AR 137-188.)

Further, Plaintiff's argument that the ALJ was precluded from reevaluating whether the Claimant's disabilities ceased because of the "law of the case" doctrine is a misplaced argument. Indeed, the very purpose of the Court's previous Judgment ordering remand and a further hearing was to allow further evidence to be obtained and examined so that these issues could be properly evaluated and decided.

Having found that the ALJ properly determined that the disabling condition had ceased, the Court's next task is to address whether the ALJ correctly decided that Claimant is not disabled by virtue of current impairments that were found in the Decision.

As to the third issue, Plaintiff's contention is that Claimant's impairments medically equal Listing 2.09, which concerns speech disorder, and also Listing 112.05, for mild mental retardation (see JS at 22). Plaintiff argues that under the regulations concerning functional equivalence for children, Claimant satisfies three of the applicable domains set out in 20 C.F.R. § 416.926a(b)(i)-(iii).

As set out in the discussion of applicable law, supra, it was the ALJ's task to determine whether Claimant has an impairment(s) which functionally equals the Listings. In order to satisfy that standard, her impairment(s) must cause "marked" functional limitations in two

7

domains of functioning, or extreme limitations in one domain.   The
domains set out in the regulations are the following:

> "(i)   Acquiring and using information;
>
> (ii)   Attending and completing tasks;
>
> (iii)  Interacting and relating with others;
>
> (iv)   Moving about and manipulating objects;
>
> (v)    Caring for yourself; and
>
> (vi)   Health and physical well-being."

The term "marked" is defined as a limitation which exists when "your impairment(s) interferes seriously with your ability to independently initiate, sustain or complete activities." (See 20 C.F.R. § 416.926a(e)(ii).)

The ALJ examined evidence (see, infra) to make his determination that Claimant did not meet or equal any of the Listings under the applicable regulations.   It must be noted that the Court's task is only to determine whether the ALJ's Decision is supported by substantial evidence which reasonably supported his conclusion.   See Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

The ALJ obtained testimony at the hearing from ME Dr. Kania, who had reviewed the entire medical record. (AR 454-476.)   It was Dr. Kania's conclusion that Claimant did not meet or equal a Listing in that her impairments did not cause marked limitations in any of the functional domains. (AR 467.)   In making this determination, Dr. Kania took into account Claimant's performance over a period of time, noting that children have different developmental rates which must be factored into the evaluation. (AR 474-475.)

The ALJ also relied upon a psychological consultative examination

("CE") by Dr. Townsend, who tested and examined Plaintiff in 2009, when she was eight years old. (AR 387-402.)  Dr. Townsend determined that Claimant's intellectual functioning was in the average to low average range. (AR 401.)

Previously, another psychological CE was performed by Dr. Taylor, who reviewed medical records, and tested and examined Claimant when she was three years old. (AR 147-151.)  Dr. Taylor concluded that Claimant has mild impairment in her cognitive development, social development, and concentration, persistence and pace, in addition to mild to moderate impairment in her communication development and response to stimuli. (AR 147-151.)

The ALJ's Decision also contains an extensive examination of Claimant's school records.  The Court cannot find that the ALJ's conclusion - that Claimant performed academically at or near her grade level while exhibiting different behavioral problems - is not supported by substantial evidence. (See AR at 264-267, 281-286, 296, 372, 387.) While Plaintiff takes great pains to point out, and the record does support that Claimant had some behavioral problems at school (Id.), the ALJ's conclusion was that, nevertheless, Claimant's impairments do not satisfy the Listings, or equal them in severity. The record does support the existence of some behavioral problems of different types and at varying times in Claimant's school performance (see summary by Plaintiff at JS 25-27). The Court disagrees, however, that these behavioral problems undermine the ALJ's conclusion that Claimant did not show marked limitations in the three stated domains. Indeed, what the Court does observe is that many of the behavioral problems which are described in the record and which Plaintiff asserts actually exist are, rather, based on the reporting of Claimant's

mother, which is often inconsistent with the actual observations of school personnel, or the conclusions of various mental health professionals who rendered opinions that were relied upon by the ALJ.

In Plaintiff's fourth issue (see JS at 33-48) she essentially argues that the ALJ improperly relied upon opinions rendered by Drs. Meyer, Taylor, Townsend, teacher Ms. Cutler, and the ME.  At the outset, the Court must again note that it is not its function to reweigh or reevaluate evidence, but rather, only to determine whether substantial evidence supports the Decision.  Under this level of review, Plaintiff's argument fails.  But, the Court will briefly examine Plaintiff's arguments to indicate why it reaches that conclusion.

First, Plaintiff erroneously concludes that this Court, in its previous Memorandum Opinion, determined that Dr. Taylor's opinion did not deserve any deference (see JS at 33, citing Memorandum Opinion, contained at AR 222-223).  That was not the Court's conclusion or the basis for the remand.  In any event, the fact is that the ALJ relied upon a whole panoply of evidence not available to the previous ALJ in rendering his current Decision.

As to both Drs. Taylor and Townsend, the record indicates that they did perform objective testing and observed Claimant, they reviewed medical evidence, and their reports are detailed and narrative.  While Plaintiff contends that Dr. Taylor's opinion "reflects advocacy posturing" (JS at 33), the Court does not perceive that, nor does Plaintiff's argument in this regard seem at all persuasive.  Plaintiff also complains that Dr. Taylor failed to provide a diagnosis, but this does not render Dr. Taylor's report unreliable.  The ALJ must make a disability determination based on

10

functional limitations which are the result of any impairments that are found.  It is not essential that there be a diagnosis in order to accomplish this task.  Further, Plaintiff's arguments about deficiencies in the IQ testing are based upon an asserted failure of the ALJ to convert Claimant's IQ scores to a "standard deviation" measurement.  This argument is without merit, since under Listing 112.05, the IQ standard deviation is already accounted for.  Further, the Court cannot find any substantiation for Plaintiff's apparent argument that IQ scores must be expressed in terms of standard deviations.

With regard to the ALJ's reliance, in part, on the opinions of the examining physicians, and the ME, the Court finds these arguments insufficient to overturn the Decision.  As to the ME, while Plaintiff argues that his opinion was "totally worthless," the extensive testimony he provided at the hearing was tied to his citations to evidence in the record. (AR 454-476.)  Further, Plaintiff asserts that Claimant suffered from autism, but none of the independent examining physicians made that diagnosis, and the ME concluded that the record as a whole fails to support a diagnosis of autism.  In any event, as noted, whether or not Claimant suffered from autism is not the point; rather, functional limitations resulting from impairments are the issue.

As to Plaintiff's argument that Ms. Cutler was unqualified to opine as to Claimant's behavior, because she only observed her for seven months, the Court finds no merit in that argument, in that the amount of time seems more than sufficient.

Plaintiff's extensive citation to the record with regard to the fourth issue certainly highlights some behavioral issues and problems

which Claimant manifested, but again, the question is whether Claimant has disabling symptoms, not whether there are behavioral problems. Here, as the Court has previously noted, the conclusion is that substantial evidence supports the ALJ's determination that disabling conditions do not exist.

**III**

**THE ALJ DID NOT IMPROPERLY REJECT OPINIONS**

**FROM DRS. SHUAHAIBAR, HEINDSELMAN, AND A TEAM OF EXPERTS**

In Plaintiff's fifth issue, she contends the ALJ improperly rejected opinions of these named individuals. The ALJ's evaluation of their reports is contained at AR 196-197. The ALJ determined not to accord significant weight to these opinions.

The extent of contact between these individuals and Claimant is not extensive. Dr. Shuahaibar apparently saw Claimant two times: in June 2006 and April 2010. (AR 153-156, 412.) Dr. Heindselman provided a one-page report in January 2007 (AR 157), which is noted to be based upon the psychiatric evaluation of Dr. Shuahaibar, reports from Claimant's mother, or observations of the Claimant by either Dr. Shuahaibar or Dr. Heindselman. Neither of these two individuals apparently provided Plaintiff with any treatment, and there are no treatment notes. Dr. Shuahaibar did not provide an opinion as to any of Claimant's functional limitations. The ALJ gave less weight to their opinions because he noted they were not consistent with the overall record. (AR 196.) Indeed, the Court concurs with the ALJ that the reports of Drs. Heindelsman and Shuahaibar incorporate and appear to be somewhat based upon the subjective reporting of Claimant's mother, which the ALJ found to be less than credible. (AR 196-199.)

12

Much of the apparent behavior reported, for example, by Dr. Heindelsman, such as that Plaintiff has been observed to rock and bang her head and bite herself is not corroborated by numerous other longitudinal records, such as school records. In addition, while Dr. Heindelsman indicated that Claimant had problems speaking, school reports contradict this, and indeed indicate that she was "able to communicate very effectively." (AR 297, 309, 328, 378, 387.)

With regard to the expert "team" cited by Plaintiff, the ALJ reviewed the report, which is from the Mojave Vista Elementary (AR 194, 197-198). This report indicates that Claimant had problems in some behavioral areas but was working close to her grade level in academics (AR 295-309).

All in all, the Court concludes that the ALJ gave appropriate weight to all of these opinions.

**IV**

**THE ALJ'S DETERMINATION AS TO PLAINTIFF'S CREDIBILITY**

**IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

In her final issue, Plaintiff argues that the ALJ improperly depreciated her credibility. She contends that the ALJ incorrectly found that she provided inconsistent statements. (JS 61, citing AR at 197.) For example, the ALJ noted that the claims made by Plaintiff as to Claimant's behavior were not supported by the Teacher Questionnaire, and Plaintiff reasserts her argument that the Teacher Questionnaire is not entitled to be viewed as a credible document, for reasons articulated in the fifth issue.

It is the ALJ's duty to provide specific reasons germane to a particular witness's testimony in order to discount the credibility of

that lay testimony.  See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009).  The reasons cited by the ALJ in the Decision include the fact that Claimant's mother refused to assist with the CE conducted by Dr. Townsend. (AR 194, 401.)  She refused to answer some of Dr. Townsend's questions. (Id.)  She refused to set aside her magazine in order to answer questions.  Although Plaintiff disagrees, the Court concludes that this is a valid reason, among others, to discount Plaintiff's credibility.

With regard to the ALJ's notation that Claimant's mother provided inconsistent statements to different physicians, such as her report that Claimant cuts herself with a razor, bangs her head, and injures herself, the ALJ properly noted that while Plaintiff made such complaints to Dr. Shuahaibar (AR 196, 153), she did not make such reports to either Drs. Taylor or Townsend. (AR 148-149, 196, 397-398.) Such inconsistencies may properly be considered by an ALJ in determining credibility.  See Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

Finally, the medical and school records substantially contradict the testimony of Claimant's mother, as the ALJ noted. (AR 197-199.) All of the examining and reviewing physicians agree that Claimant was not as functionally limited as Plaintiff's mother alleged.  This is also evident in the school records, which indicate behavior problems, but also demonstrate that Claimant academically functioned at or near her grade level.

All in all, the Court finds that the credibility determination is supported by substantial evidence.  It should be noted that while Plaintiff claims that her failure to cooperate with Dr. Townsend's examination is not relevant to her credibility, because she is not the

Claimant, the Court finds that applicable case law is supportive of the principle that a failure to cooperate with an examining physician is an indicator of lack of credibility.  The fact that the Claimant here was a very young child is also relevant, in that the mother's cooperation would be very material to the success of the examination.  The Court sees no basis to distinguish case law which provides that failure to cooperate by a claimant is a ground for diminishing credibility.  In the context of this case, the same principles are applicable.

The decision of the ALJ will be affirmed.  The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: November 8, 2012                    /s/
                                 VICTOR B. KENTON
                                 UNITED STATES MAGISTRATE JUDGE